No. 78,342

In the Matter of WILLIAM E. NEAL, JR., *Respondent.*

(937 P.2d 1234)

Opinion filed May 30, 1997.

*Stanton A. Hazlett,* chief deputy disciplinary administrator, argued the cause, and *Mark F. Anderson,* disciplinary administrator, was with him on the formal complaint for petitioner.

No appearance by respondent.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against William E. Neal, Jr., of Liberal, Kansas, an attorney licensed to practice law in the state of Kansas. Complaints against the respondent alleged that he violated MRPC 1.1 (1996 Kan. Ct. R. Annot. 257) (competence), MRPC 1.3 (1996 Kan. Ct. R. Annot. 264) (diligence), MRPC 1.4 (1996 Kan. Ct. R. Annot. 270) (communication), MRPC 1.5 (1996 Kan. Ct. R. Annot. 276) (fees), MRPC 3.2 (1996 Kan. Ct. R. Annot. 319) (expediting litigation), MRPC 8.4 (1996 Kan. Ct. R. Annot. 350) (misconduct) and Supreme Court Rule 207 (1996 Kan. Ct. R. Annot. 205).

### Case No. A6519

Complainant, Peter Wong, slipped and fell on ice at the Dwight D. Eisenhower Center in Abilene, Kansas, on December 30, 1992. In January 1993, the complainant retained the respondent to represent him in a negligence action. On December 21, 1993, the respondent sent a letter to the legal staff of the National Archives and Records Administration (NARA). The respondent attached a Standard Form 95 Claim for Damage, Injury or Death to his letter. The claim was for the sum of $15,000. On July 6, 1994, the NARA's legal staff informed the respondent that the NARA denied responsibility for the claim. Contained in NARA's letter to the respondent was a notice that suit had to be filed in the appropriate United States District Court within 6 months of the date the NARA's letter was received by the respondent.

On December 19, 1994, the respondent filed a petition for damages on behalf of the complainant in Reno County District Court rather than the United States District Court for the District of Kansas. On January 18, 1995, the Assistant United States Attorney representing the NARA filed an entry of appearance. On February 2, 1995, the NARA filed an answer and a motion to dismiss for lack of jurisdiction. Both the answer and motion to dismiss sought a dismissal of the lawsuit on the ground that the Federal Tort Claims Act required the suit to be filed in United States District Court. On February 17, 1995, an order of dismissal was filed in Reno County District Court. The respondent approved the dismissal. At the time of the dismissal of the complainant's action in state court, the federal statute of limitations had expired.

The respondent failed to inform the complainant of the dismissal and of his failure to file the action in federal court. Wong filed a complaint with the Disciplinary Administrator's office on January 26, 1996. At that time, the complainant was not aware that his claim in federal court was time barred. Prior to filing his complaint, the complainant had attempted to contact the respondent for 4 months to inquire about his case. The respondent did not answer the complainant's calls and failed to inform the complainant as to the status of the case. The respondent was notified of the complaint.

In February 1996, the respondent began negotiating a settlement of Wong's malpractice claim against him. On July 11, 1996, the complainant executed a "Release In Full of All Claims" against the respondent for $6,000, payable at $200 per month. The release prepared by the respondent also included a release of the respondent from any disciplinary claims. On April 30, 1996, the complainant informed the investigator of the disciplinary complaint that he wished to dismiss the complaint upon signing the release and receiving payment of $6,000.

The hearing panel found by clear and convincing evidence that the respondent's actions and behavior violated MRPC 1.1, MRPC 1.2 (1996 Kan. Ct. R. Annot. 261) (scope of representation), MRPC 1.3, and MRPC 3.2. The panel determined that the respondent had not violated MRPC 8.4(d) or 8.4(g) or Supreme Court Rule 207. The Disciplinary Administrator emphasized to the panel that

the respondent exhibited no evidence of any selfish or dishonest motive. Further, the respondent consulted with the assigned investigator on the conditions of the release before, during, and after it was finalized in his attempt to cooperate with the investigation and to resolve any potential financial loss to the complainant due to the respondent's lack of diligence.

## Case No. A6634

On December 28, 1995, a complaint was sent to the Disciplinary Administrator's office by the Honorable William F. Lyle, Reno County District Court Judge alleging that the respondent had disappeared from his law office in the early part of November 1995 without notice to his clients. The judge expressed concern that the respondent had made no plans to provide adequate representation and counsel to his clients. In December 1995, the respondent returned to his practice, contacted Judge Lyle, and indicated to the judge that he wished to resume his practice of law. The respondent explained his absence was caused by an addiction to gambling and stated he had abandoned his law practice to make a trip to Las Vegas, Nevada.

Judge Lyle stated in his complaint that other attorneys and the respondent's clients had attempted to contact the respondent during his absence on many occasions. Messages from attorneys and clients went unanswered for several weeks. Judge Lyle listed five instances where the respondent had not complied with his responsibilities to his clients and to the Reno County District Court. The panel found that two instances were proved by clear and convincing evidence:

In one instance, the respondent represented Curtis Harper, who had been charged with possession of cocaine with intent to sell. A preliminary examination originally set on November 9, 1995, was continued to December 12, 1995, to allow the respondent to attend a CLE session. Neither the respondent nor Mr. Harper appeared at the December 12, 1995, scheduled preliminary examination. A warrant was issued for Harper's arrest. The respondent explained to the panel that upon his return, he appeared with Harper, had the warrant withdrawn, and had a new court date set.

In the next instance, the respondent was retained by Michael Capps, who was charged with speeding. Mr. Capps appeared for trial and informed the court that he had retained and paid the respondent to represent him but could not locate the respondent. Mr. Capps proceeded to trial pro se. The respondent stated to the panel that when several witnesses refused to testify, Capps lost his case. The respondent refunded Mr. Capps' retainer.

The hearing panel found the respondent's actions and behavior in these matters amounted to a violation of MRPC 1.1, 1.3, and 1.4. In further findings, the panel considered in part the following findings of aggravation:

"a. Prior disciplinary offenses. Respondent has two prior disciplinary offenses in the form of informal admonitions.

. . . .

"c. A pattern of misconduct. In this consolidated matter, a number of clients were abandoned by the respondent for significant periods of time with no measures taken to maintain communication with clients or providing substitute legal representation during respondent's absences. Further, in the fall of 1996, the respondent yielded to his addiction to gamble by attempting to travel to Las Vegas, Nevada for that purpose. A car accident prevented him from completing the trip.

"d. Multiple offenses. In this consolidated matter, a number of clients were abandoned by the respondent for significant periods of time with no measures taken to maintain communication with clients or providing substitute legal representation during respondent's absences.

. . . .

"i. Substantial experience in the practice of law. Respondent has been a practicing attorney since 1988."

## The panel considered the following facts of mitigation:

"a. Absence of a prior disciplinary record. Respondent has a prior disciplinary record of two informal admonitions.

"b. Absence of a dishonest or selfish motive. Respondent's conduct demonstrated no dishonest or selfish motive.

"c. Personal or emotional problems if such misfortunes have contributed to the violations of the Kansas Rules of Professional Conduct. Respondent admits that he has a gambling addiction and that he is willing to continue treatment for his problem.

"d. Timely good faith efforts to make restitution or to rectify consequences of misconduct. In Case No. A6519, respondent entered into a settlement agreement with the complainant to the complainant's satisfaction. In Case No. A6634 the respondent refunded his retainer to his client to his client's satisfaction.

"e. The present and past attitude of the attorney as shown by his cooperation during the hearing and his full and free acknowledgment of the transgressions. Respondent has been cooperative during the course of these proceedings and has fully acknowledged the wrongful nature of his conduct.

. . . .

"g. Previous good character and reputation in the community including any letters from clients, friends and lawyers in support of the character and general reputation of the attorney. Respondent's current supervisor at the public defender's office spoke in support of the respondent. She stated to the panel that she is pleased with how the respondent is handling his caseload.

. . . .

"i. Mental disability or chemical dependency including alcoholism or drug abuse when (1) There is medical evidence that the respondent is affected by a chemical dependency or mental disability; (2) The chemical dependence or mental disability caused the misconduct; (3) The respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation, and; (4) The recovery arrested the misconduct and recurrence of that misconduct is unlikely. Respondent's gambling addiction may be viewed as a mental disability to the extent that it appears to be a compulsive mental disorder. The record lacks any evidence as to the generally anticipated success rate of rehabilitation efforts. Respondent stated that he has stopped gambling. He has met with a counselor and is willing to continue in therapy.

. . . .

"l. Remorse. Respondent exhibited sincere remorse for his actions.
"m. Remoteness of prior offenses. The complaints giving rise to the two prior informal admonitions were filed in 1992 and 1994.
"n. Any statement by the complainant expressing satisfaction with restitution and requesting no discipline. In Case No. A6519 the complainant signed a letter requesting his complaint be dismissed pursuant to his settlement agreement with the respondent. As this panel does not condone such agreements the panel does not construe the complainant's letter to be a mitigating factor."

Based upon these findings and considerations, the panel found that the respondent committed the alleged violations of the Kansas Model Rules of Professional Conduct. The panel, following the Disciplinary Administrator's recommendation found that the respondent should be placed on supervised probation for a period of 2 years subject to the following conditions:

"1. Respondent must strictly comply with the terms of his settlement agreement with the complainant in Case No. A6519 in that the agreed-upon amount of $200 per month be paid until the full settlement amount of $6,000 is satisfied in full.

"2. In the event that the respondent should leave his position with the public defender's office he must immediately notify the Disciplinary Administrator's Office. The Disciplinary Administrator's Office shall be entitled to bring any such action as is necessary before the Supreme Court of the State of Kansas so as to assure that respondent's practice is adequately supervised.

"3. Respondent shall cause his supervisor in the public defender's office, or his/her successors, to report to the Disciplinary Administrator's Office every fourth months on his progress and conduct, or, if problems arise, immediately.

"4. Respondent must meet with a qualified psychiatrist or psychologist, subject to the approval of the Disciplinary Administrator's Office, and receive a formal evaluation. A copy of the evaluation shall be forwarded to the Disciplinary Administrator's Office. The respondent shall comply with the evaluation's recommendation and he shall keep the Disciplinary Administrator's Office apprised of his compliance with the recommendations.

"5. Respondent must meet with a member of the impaired lawyers' assistance panel, as recommended or approved by the Disciplinary Administrator's Office, on a periodic basis.

"6. The respondent shall not gamble or participate in any other games of chance."

## NEW INFORMATION

On March 26, 1997, the Disciplinary Administrator, pursuant to Supreme Court Rule 212(b) (1996 Kan. Ct. R. Annot. 217), recommended that the respondent be disbarred from the practice of law because of his failure to comply with two crucial conditions set by the panel in its final hearing report. In support of these recommendations, the Disciplinary Administrator stated:

"The panel recommended that the respondent must strictly comply with the terms of a settlement agreement that he entered into with the complainant in Case No. A6519. The complainant in Case A6519 was Peter Wong. The respondent had agreed to represent Mr. Wong in a slip and fall incident which occurred at the Eisenhower Museum in Abilene, Kansas. The respondent allowed the matter to be dismissed at a time when the statute of limitations had expired. Subsequently, the respondent entered into agreement with Mr. Wong in which he agreed to pay Mr. Wong $6,000 to be paid in payments of $200 a month beginning September 15, 1996. (Disciplinary Administrator's Exhibit H in Case No. A6519). Subsequent to the disciplinary hearing on December 10, 1996, the respondent has failed to make the $200 payments to Mr. Wong in January and February. The January payment of $200 to Mr. Wong by the respondent was made by a check dated January 15, 1997. That check was returned for insufficient funds. A copy of a letter to the Disciplinary Administrator's Office from Mr. Wong dated February 7, 1997, informing the Disciplinary Administrator's Office of the insufficient funds

check is attached hereto and marked Exhibit A. A copy of the insufficient funds check is attached to Mr. Wong's February 7, 1997 letter. Another letter from Mr. Wong dated February 19, 1997, is attached hereto and marked Exhibit B. In that letter Mr. Wong informed the Disciplinary Administrator's Office that the February payment from Mr. Neal had not been received. On February 5, 1997, Stan Hazlett of the Disciplinary Administrator's Office wrote the respondent a letter in which the respondent was advised of the correspondence received from Peter Wong. In addition, the respondent was advised that Mr. Hazlett would inform the Supreme Court of any failure of the respondent to comply with his settlement agreement with Mr. Wong. The respondent has taken no action to become current on his obligation to Mr. Wong and the insufficient funds check remains outstanding. The Disciplinary Administrator's Office has received no response to the February 5, 1997, letter written to the respondent. That letter is attached hereto and marked Exhibit C. The respondent assured the panel members at his hearing that he would take care of his obligation to Mr. Wong. [Citation omitted.]

". . . The Disciplinary Administrator's Office made its recommendation, in part, based on the fact that the respondent, at the time of the disciplinary hearing, was employed as an attorney at the Liberal, Kansas, Public Defender's Office. The panel made it a condition of its recommendation that the respondent should notify the Disciplinary Administrator's Office if he should leave the Public Defender's Office. [Citation omitted.] On March 15, 1997, Stan Hazlett received a letter from Natalie G. Haag who is the Executive Director of the Board of Indigent Defense Services. In that letter, Ms. Haag informed Mr. Hazlett that Mr. Neal had resigned from the Liberal, Kansas, Public Defender's Office on March 8, 1997. A copy of that letter is attached hereto and marked Exhibit D. The letter contains the following information: Ms. Haag was able to determine that Mr. Neal left the Public Defender's Office on February 28, 1997. On March 3, 1997, Mr. Neal advised a secretary in the Liberal office that he was in Wichita because his father had suffered a heart attack. Ms. Haag learned that the representation made by Mr. Neal about his father's condition was false. Mr. Neal failed to return to the office when he said he would do so and consequently missed some court appearances. According to Ms. Haag, the respondent was to second chair two felony trials and failed to do so. Additionally, Mr. Neal missed an arraignment hearing which resulted in a bond forfeiture. The respondent did not notify the Disciplinary Administrator's Office of his resignation from the Liberal, Kansas, Public Defender's Office. Ms. Haag stated in her letter to the Disciplinary Administrator's Office that she had contacted the respondent's former wife who indicated to Ms. Haag that she feared Mr. Neal had headed back to Las Vegas, Nevada."

We hold that the respondent should be disbarred from the practice of law in Kansas.

IT IS THEREFORE ORDERED that William E. Neal, Jr., be and he is hereby disbarred from the practice of law in Kansas, and his license and privilege to practice law are hereby revoked.

IT IS FURTHER ORDERED that the Clerk of the Appellate Courts strike the name of William E. Neal, Jr., from the roll of attorneys licensed to practice law in Kansas.

IT IS FURTHER ORDERED that this order shall be published in the Kansas Reports, that the costs herein shall be assessed to the respondent, and that the respondent forthwith shall comply with Supreme Court Rule 218 (1996 Kan. Ct. R. Annot. 226).